## Kleiner Estate

*Morris H. Goldman* and *Wolf, Block, Schorr & Solis-Cohen,* for exceptant.

*Nochem S. Winnet, Donald Brown* and *Fox, Rothchild, O'Brien & Frankel,* contra.

BURKE, J., May 12, 1961.—This case is before the court on exceptions to the action of the auditing judge in dismissing the claim of the guardian of the Estate of Brian David Wolfson, a minor, to title to a certain

$10,000, face value, United States Savings Bond, Series H.

Decedent purchased the $10,000 bond with her own funds on January 14, 1958, and caused it to be registered in the following legend: "Mrs. Blanche F. Kleiner, M.D. POD (payable on death) Louis Wolfson." Louis Wolfson had been decedent's husband who predeceased her by approximately nine years. Later in January or February 1958, decedent handed the said $10,000 bond to claimant in the presence of his parents, and said, "This is yours." Claimant's father examined the bond and stated that the named POD beneficiary was the grandfather of claimant, then long deceased. Decedent then replied, "They made a mistake. I will change it. I will have them change it." The bond was then immediately returned to decedent and she retained possession of it until the time of her death without having changed the original registration.

Claimant argues that as a result of decedent's expressed oral intention, as above recited, the real POD beneficiary of the bond, irrespective of its registration, is the metaphysical person, Brian David Wolfson, claimant. Such an argument, if valid, would supply the missing legal requirement of delivery in cases of gifts and conform the claim to the regulations of the United States Treasury Department.

By stipulation of counsel the regulations of the United States Treasury Department applicable to treasury bonds, series A to H, are deemed to be part of the present record. The pertinent treasury regulations (C. F. R.) provide as follows:

"Section 315.65. During the life time of the registered owner. A savings bond registered in beneficiary form . . . will be paid or reissued upon presentation and surrender during the life time of the registered owner."

"Section 315.70. Payment or reissue on death of owner. (a) General. Upon the death of the owner of a savings bond who is not survived by a coowner or designated beneficiary and who had not during his lifetime presented and surrendered the bond for payment . . . the bond will be considered as belonging to his estate."

In Horstman Estate, 398 Pa. 506, a question of ownership arose between the estate of deceased coowner, purchaser, and the surviving coowner of certain United States Treasury Bonds, series E, and the court, referring to the laws of the various States, said at p. 512:

"The majority view takes the position that the question involved is not one of gift, but rather of contract and that the federal regulations, by reason of the authority of the Secretary of the Treasury to impose conditions upon the issuance of the bond and the incorporation by reference of such regulations in the bond, are part of the bond and constitute a contract between the bond purchaser and the issuer, i.e., the United States Government, and the surviving co-owner stands in the position of a third party beneficiary to such a contract."

It follows, therefore, that decedent-owner having died without being survived by the designated beneficiary, title to the bond indisputably vested in decedent's estate as provided by treasury regulation section 315.70 above recited.

Claimant does not charge any inequity which would entitle him to the proceeds as distinguished from the bond itself, as pointed out in Horstman Estate, supra, in which the court said, page 516:

"To the almost universally accepted rule of the primacy of these federal regulations over the laws of the individual states in fixing the ownership of these

bonds in surviving co-owners an exception is generally recognized. If it is established . . . that the purchaser was guilty of inequitable conduct in the purchase and registration of the bonds, . . . many courts have properly taken the position that, even though the federal regulations absolutely control and govern payment of the amount of the bond to the surviving co-owner by the issuer, the Government, yet, upon payment being received from the Government by the surviving co-owner, the *proceeds* of the bond—not the bond itself — may be impressed with a trust: . . ."

The immediate quotation, above cited, limits the area within which a finding can be made awarding the proceeds of the bond presently in dispute to claimant, to the single instance of *inequitable conduct* practiced by decedent in the *purchase and registration* of the bond. The record is mute of either an averment or evidence of such conduct. Claimant's case rests entirely on decedent's statements made *subsequent* to the purchase of the bond.

The record does not disclose the presence of anyone excepting decedent at the time of purchase, nor does it reveal any conversations by decedent concerning the bond *prior* to its purchase. Her later statement with respect to its registration that "They made a mistake" is nullified by her failure to effect a reissuance of the bond, and cannot bring the claim within the limits erected by the court in the Horstman opinion.

The learned auditing judge in his adjudication, although expressing no disbelief of the testimony of claimant's parents, nevertheless, pointedly stated: "Assume further that the decedent intended the bond to be registered payable on death to Brian, it is acknowledged that she had the bond in her possession from February until she died in September, and in

the intervening time she made other purchases of United States Savings bonds as a reference to the inventory will show. The decedent's failure to put the registration of the bond in such a condition that it would conform with the regulations of the United States Treasury negates the so-called intention to make a present inter vivos gift."

Decedent died September 17, 1958, leaving a will dated August 25, 1958, in which she made several pecuniary gifts and also made reference to a completed gift of $20,000, face value, in United States Savings Bonds, Series H, which she had purchased in 1954 and 1955, and registered in the names of "Blanche F. Kleiner Wolfson or Brian David Wolfson," the present claimant.

Decedent's will supplies articulate testimony to controvert Brian's claim. Her will was executed on August 25, 1958, and recites the gift of $20,000 in bonds, which were purchased in 1954 and 1955, and properly registered in Brian's name as co-owner. It is inconceivable that decedent would have such a clear recollection of a transaction completed four or five years previously, and not recall a gift of the $10,000 bond allegedly made only eight months earlier.

A gift is more than a purpose to give, however clear and well settled that purpose may be. It is a purpose executed. It may be defined as a voluntary transfer of a chattel completed by delivery of possession. It is the fact of delivery that converts the unexecuted revocable purpose into an executed, and therefore, irrevocable contract. In every valid gift present title must vest in the donee irrevocably. See Walsh's Appeal, 122 Pa. 177. This is not the situation in the present case.

For the above reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.